COPY

1   I. NEEL CHATTERJEE (STATE BAR NO. 173985)
    nchatterjee@orrick.com
2   VICKIE FEEMAN (STATE BAR NO. 177487)
    vfeeman@orrick.com
3   JULIO C. AVALOS (STATE BAR NO. 255350)
    javalos@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
5   Menlo Park, CA  94025
    Telephone:    650-614-7400
6   Facsimile:    650-614-7401

7   Attorneys for Non-Party
    NVIDIA CORPORATION
8

ORIGINAL FILED

JAN 2 8 2009

Richard W. Wieking
Clerk, U. . District Court
Northern District of California
San Jose

9

10                   UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                        SAN JOSE DIVISION

                   CV 09 - 80012 MISC.

                                                              JF

                                                             HRL

13

14   NEGOTIATED DATA SOLUTIONS, INC.     Case No.

15              Plaintiff,               Action pending in the United States District
                                         Court for the Eastern District of Texas (2:06-
16        v.                             cv-528-CE)

17   DELL, INC.                          **DECLARATION OF JULIO C.
                                         AVALOS IN SUPPORT OF NON-
18              Defendant                PARTY NVIDIA CORPORATION'S
                                         MOTION TO QUASH DEPOSITION
19                                       SUBPOENAS**

20                                       Date:    TBD
                                         Time:    TBD
21                                       Judge:   TBD

22

23

24

25

26

27

28

DECLARATION OF JULIO C. AVALOS IN SUPPORT OF
MOTION TO QUASH SUBPOENAS

I, Julio C. Avalos, declare as follows:

1.      I am an attorney with the law firm of Orrick, Herrington & Sutcliffe LLP, counsel for Non-Party NVIDIA Corporation. I make this Declaration in support of NVIDIA's Motion to Quash Negotiated Data Solutions LLC's ("N-Data") 30(b)(6) deposition subpoenas to NVIDIA. I am an active member in good standing of the California State Bar. As set forth herein, I have personal knowledge of the facts stated herein and if called as a witness, could and would competently testify thereto.

2.      On February 26, 2008, N-Data served a subpoena commanding NVIDIA to produce and permit inspection and copying of documents and things. The subpoena included thirty-one document requests.

3.      After a series of conversations with Greg Bishop and Stuart Bartow, counsel for N-Data, NVIDIA's time to respond and/or object to N-Data's request was extended to April 1, 2008.

4.      A true and correct copy of a letter I sent to Mr. Bishop on March 13, 2008 is attached hereto as **Exhibit A**.

5.      NVIDIA served discovery responses on April 1, 2008 and produced 846 pages of documents on April 8, 2008.

6.      On April 22, 2008, Mr. Bartow wrote to me to state that N-Data was not satisfied with NVIDIA's production. In order to resolve any disputes between the parties, I met and conferred with Mr. Bartow. During the meet and confer, Mr. Bartow and I negotiated a narrowing of the scope of N-Data's discovery requests. Mr. Bartow provided me with a list of specific NVIDIA products in which N-Data was interested.

7.      On April 30, 2008, after an additional search, NVIDIA supplemented its document production with 114 pages of new documents. These documents consisted of microarchitectural specifications, flow charts, diagrams, data sheets, and chip design guides.

8.      Two weeks later, on May 19, 2008, I received a letter from Mr. Bartow stating that N-Data was still not satisfied with NVIDIA's production. A true and correct copy of this letter is attached hereto as **Exhibit B**.

9.   In response to Mr. Bartow's letter, on May 22, 2008, I sent an email to Mr. Bartow confirming receipt of his May 19, 2008 letter. As I was leaving the country on vacation that day, I told Mr. Bartow that I would not be available to meet and confer until the week of June 2, 2008. I advised Mr. Bartow that NVIDIA had more than fully complied with N-Data's subpoena and that N-Data's behavior "seem[ed[ aimed to do little more than create additional burden and expense" for NVIDIA. A true and correct copy of my May 22 email to Mr. Bartow is attached hereto as **Exhibit C**.

10.   On June 4, 2008, I sent another letter to Mr. Bartow following up on my May 22 email. In it I wrote, "As stated in my May 22 email, NVIDIA has fully complied with N-Data's February 26, 2008 subpoena as required by the Federal Rules of Civil Procedure. N-Data's continued insistence for duplicative reassurances regarding the exhaustiveness of NVIDIA's production seems aimed to accomplish little more than create additional burden and expense for our client." A true and correct copy of my June 4, 2008 letter to Mr. Bartow is attached hereto as **Exhibit D**.

11.   In response to my June 4, 2008 letter, Mr. Bartow requested another meet and confer. Mr. Bartow and I conferred on June 19, 2008. During the meet and confer, Mr. Bartow advised me that N-Data wanted reassurance that it had received all of the microarchitectural documents relevant to the subset of products we had agreed upon on April 22, 2008. I told Mr. Bartow that NVIDIA had produced all relevant non-privileged documents in its possession. Mr. Bartow then told me that NVIDIA had not received any documents responsive to N-Data's Discovery Request No. 7, which requested "All documents relating to NVIDIA's commercial relationship with Dell or with any of Dell's direct or indirect suppliers of any Dell products based upon the USB Chipsets or HDA Chipsets, including, but not limited to, supply agreements, indemnity agreements, defense agreements, development agreements and license agreements." I told Mr. Bartow that under federal law, as a nonparty NVIDIA was not required to produce documents that N-Data should be able to get from its party-opponent. I provided Mr. Bartow with relevant case citations and he did not push the issue further. Mr. Bartow made no mention of requiring additional documents of any kind.

12.     Four months later, on October 14, 2008, I received a letter from Charles F. Koch, another of N-Data's counsel. Mr. Koch wrote, "While NVIDIA has produced 961 pages, these documents fail to respond adequately to the subpoena as outlined in previous correspondence." "As we are now nearing the close of discovery and NVIDIA has not provided documents in these key areas, we would like to meet and confer regarding your production as soon as possible . . . Because N-Data views this matter with some urgency, N-Data requests a meet and confer as soon as possible to avoid a motion to compel." A true and correct copy of Mr. Koch's October 14 letter is attached hereto as **Exhibit E**.

13.     The next day, on October 15, 2008, I responded to Mr. Koch by way of letter. I again reiterated that NVIDIA had already more than fully complied with its legal obligations respective to N-Data's subpoena. I wrote: "Your letter raises issues exhaustively covered and settled with Stuart four months ago during our June 19 meet and confer. Any additional conference on duplicative, settled issues would be redundant, unnecessary and overly burdensome to our client, who is not even a party to your action. Further, your letter is the first communication I have received regarding this matter since Stuart and I settled all outstanding issues on June 19. This four-month delay undercuts the 'urgency' your letter expresses. After such an extended delay, it is unreasonable for you to demand a duplicative meet and confer on one or two days' notice and threaten to file a motion to compel if your demand is not granted." A true and correct copy of my October 15 letter to Mr. Koch is attached hereto as **Exhibit F**.

14.     On December 12, 2008, I received a voicemail from Mr. Bishop requesting yet another meet and confer on NVIDIA's production. We scheduled a call for December 15.

15.     At the December 15 meet and confer, Mr. Bishop stated that N-Data was still not satisfied with NVIDIA's production. Specifically, Mr. Bishop stated that N-Data felt that it needed even more "micro-architectural documents." Mr. Bishop also identified an additional NVIDIA product that Mr. Bartow had not included on his April 22 list. Mr. Bishop threatened that if NVIDIA did not produce documents to its liking, N-Data would be forced to move to compel production of NVIDIA's source code as well as subpoena a deposition.

///

16.     In response to Mr. Bishop's concerns, NVIDIA performed yet another search for responsive documents. On December 19, 2008, I sent a letter to Mr. Bishop regarding our latest conference and advised him that NVIDIA had not yet completed its latest investigation and that the holiday unavailability might delay NVIDIA's search. A true and correct copy of this letter is attached hereto as **Exhibit G**.

17.     On January 8, 2009, NVIDIA produced a third set of documents containing archived microarchitectural diagrams and design specifications.

18.     Also on January 8, 2009, I had another meet and confer with N-Data's counsel. They once again threatened that they were "forced" to move to compel source code and would also be seeking a subpoena for a 30(b)(6) witness.

19.     On January 13, 2009, N-Data served a 30(b)(6) deposition subpoena. The subpoena was unaccompanied by the required deponent fee, did not provide adequate time to respond and also failed to state the means by which the deposition would be recorded.

20.     My colleague, Chester Day, alerted N-Data that the subpoena it had served was invalid. N-Data consequently served a second 30(b)(6) deposition subpoena on January 23, 2009.

21.     On January 28, 2009, I and Mr. Day met and conferred telephonically with counsel for N-Data. The meet and confer touched on both the outstanding 30(b)(6) subpoena and N-Data's threat to move to compel production of NVIDIA's source code. N-Data continued to argue that NVIDIA's previous productions had been insufficient.

22.     The parties then attempted to work through the individual deposition topics identified by N-Data in their subpoena. With respect to Deposition Topics Nos. 1 and 3, NVIDIA insisted that federal law required N-Data to obtain discovery available from a party-opponent from that party-opponent rather than seeking it from a non-party. N-Data disagreed. The parties were unable to come to an agreement with respect to Deposition Topics Nos. 2 and 4.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

/ / /

/ / /

1    Executed this 28th day of January, 2009, at Menlo Park, California.

2

3                                     Julio C. Avalos

4

5

6

7

8

9

10

11

12

13

14

15

16

OHS West:260582482.5

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JULIO C. AVALOS IN SUPPORT OF
MOTION TO QUASH SUBPOENAS

# EXHIBIT A



**ORRICK**

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CA 94025

tel 650-614-7400
fax 650-614-7401
WWW.ORRICK.COM

March 13, 2008

Julio C. Avalos
(650) 289-7184
javalos@orrick.com

*VIA FIRST CLASS MAIL AND E-MAIL ATTACHMENT*

Greg Bishop
181 Lytton Avenue
Palo Alto,  CA 94301
(650)  752 - 3140

Re:     <u>NVIDIA Non-party Production</u>

Dear Greg:

I hope this letter finds you well.  First, I wanted to write to thank you for the courtesy of extending NVIDIA's time to respond to your subpoena requesting the production of documents. As agreed in our stipulation, NVIDIA's time to respond and/or object to your requests has now been extended to April 1, 2008.  This letter also confirms acknowledgement of your e-mail of March 10, in which you stated your belief that a formal filing of the stipulation was unnecessary and that your agreement to extend time would suffice.

Second, in the interest of making this process run as smoothly as possible, I wanted to address some early concerns regarding your document requests to our client, NVIDIA.  I appreciate your wish to expedite this production and hope that early resolution of these concerns will head off any future issues.

As you recall, you, Vickie Feeman, and I spoke briefly on Tuesday, March 4 to discuss your subpoena.  During that discussion, Vickie asked whether you could identify particular NVIDIA products that you believe are relevant to the underlying lawsuit between N-DATA and Dell.  You stated that you would have to get back to us with specifics.  Please respond by identifying the relevant NVIDIA products.  In a related vein, we would also appreciate an explanation of how the information that you are requesting from our client is more broadly relevant to the underlying litigation.

We would also ask that you explain why the information that you seek from NVIDIA is necessary.  I've briefly spoken to Stuart about this issue, asking why it was that discovery could not be obtained from Dell.  He responded that some information, particularly that presumably included in the micro-architecture specifications, was not accessible to Dell.  At least some of the information requested, however, would seem to be readily available from other sources.  Request No. 8, for example, seems to request industry standard specifications that are easily accessible from other



**ORRICK**

Greg Bishop
March 13, 2008
Page 2

sources. We request that you please explain why the information available from Intel and other public sources is not sufficient.

We have two concerns relating to confidentiality and the protective order in place in your underlying litigation. Please confirm that, pursuant to that protective order, N-DATA will not use any information that our client may produce in any manner other than in the ongoing litigation between N-DATA and Dell. Finally, we request that N-DATA agree not to challenge the confidentiality designation of any materials that might be produced; that it agree to move the court to close any hearing, trial or other proceeding where any such information is used; that, if the information is used at any deposition, N-DATA will designate the deposition transcripts in accordance with the designation given to any such materials; and that it will exclude from deposition all persons other than those qualified to receive the information under the protective order.

I thank you in advance for your attention to these matters and would appreciate a timely response.

Best regards,

Julio C. Avalos

Cc:    Vickie Feeman
       D. Stuart Bartow

# EXHIBIT B

GOODWIN | PROCTER

D. Stuart Bartow
650.752.3148
sbartow@
goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
135 Commonwealth Drive
Menlo Park, CA 94025
T: 650.752.3100
F: 650.853.1038

May 19, 2008

**VIA E-MAIL**

Julio Avalos
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA  94025

Re:    **Negotiated Data Solutions LLC v. Dell, et al.**
       **Case No. 2-06-cv-528(CE)**
       **Our File No. 122947-173970**

Dear Julio:

Thank you for your April 30, 2008 letter enclosing 114 pages of additional documents (NVIDIA 0847- 0961) in response to N-Data's February 26, 2008 subpoena.  Although the recent document production is smaller than we would expect, it is more in line with the type of technical documents that we are seeking from NVidia.  This most recent production, however, still does not address some of the issues raised in my April 22, 2008 letter.

*RFP Nos. 1-4* – With respect to N-Data's Request For Production ("RFP") Nos. 1-4, your April 30 letter does not address (1) whether NVidia conducted a reasonable search for documents, (2) whether NVidia found any documents responsive to these requests, and (3) whether NVidia is withholding documents based on any of its objections.  Please let us know your position with respect to these RFPs.

*RFP Nos. 5-6 and 8-31* – These RFPs relate to NVidia's technical documents that show the internal structural and functional details of NVidia's products, including Nvidia's USB and HDA modules.  As noted above, NVidia's latest production includes the level of technical detail requested in these RFPs.  However, N-Data continues to seek *all* responsive documents that show the internal structural and functional details for, e.g., the USB and HDA modules, including microarchitecture specifications, functional specifications, and architectural specifications.  Also, we are unclear as to whether NVidia's recent document production includes the most up-to-date documents relating to the relevant NVidia products.  For example, in the most recent production of 114 pages, there appear to be 45 undated pages, 29 pages dated in 2004, 22 pages dated in 2006, and only 18 pages dated in 2008.  We request that NVidia conduct a further search for documents in response to these RFPs, or confirm that no other such documents exist.

LIBA/1893373.1

GOODWIN | PROCTER

Julio Avalos
May 19, 2008
Page 2


Another issue raised in my April 22 letter is that we believe NVidia has unilaterally narrowed the scope of documents sought in these RFPs. N-Data seeks a broader category of documents than those that provide only a general overview of the USB and/or HDA features present in NVidia products. We understand from your recent production that NVidia is now searching for a broader range of documents, including those of the type produced on April 30th. Please confirm that we have the common understanding on this issue.

Further, with respect to RFP Nos. 9-10 and 28, please state (1) whether NVidia conducted a diligent search for documents, (2) whether NVidia found any documents responsive to these requests, and (3) whether NVidia is withholding documents based on any of its objections.

*RFP No. 7* –NVidia has not produced any documents responsive to this RFP. This RFP seeks documents relating to, *inter alia*, NVidia's commercial relationship with Dell or with any of Dell's suppliers. These documents are critical for N-Data, *inter alia*, so it can determine NVidia's relationship with Dell and what products it supplies to Dell. Please let us know when documents responsive to this request will be produced. Again, N-Data will work with NVidia to minimize any potential burden on NVidia to locate and produce documents responsive to this RFP.

*RFP Nos. 30 and 31* – Our April 22 letter requested that NVidia confirm that it will produce all specifications detailing "endpoints," which the USB Specification defines as "[a] uniquely addressable portion of a USB device that is the source or sink of information in a communication flow between the host and device." We believe that NVidia's products contain USB and HDA controller circuitry, including "USB endpoints or devices" and "HDA endpoints or devices." Please confirm that NVidia will produce all specifications detailing such endpoints.

In light of the foregoing, please let us know your positions with regard to these issues by May 27, 2008. N-Data is also available to meet and confer next week to discuss the issues raised in this and my April 22 letter.


Regards,

D. Stuart Bartow

DSB/rrn

# EXHIBIT C

## Escamilla, Diane

| | |
|---|---|
| **From:** | Avalos, Julio |
| **Sent:** | Thursday, May 22, 2008 10:58 AM |
| **To:** | 'sbartow@goodwinprocter.com' |
| **Cc:** | Feeman, Vickie |
| **Subject:** | Re: N-Data |

Stuart,

I hope this e-mail finds you well. I'm confirming receipt of your letter of this past Monday, May 19.

Please note that I will be out of the country as of this afternoon and will be unable to discuss the ongoing N-Data discovery requests until the week of June 2.

Although I'm not now in a position to give a formal or full response to the issues raised in your letter, I will note that NVIDIA has produced any documents in its possession that show the internal structural and functional details for the USB and HDA modules cited in your subpoena.

Many of the issues in your letter seem aimed to do little more than create additional burden and expense for our client. For example, your letter ostensibly raises concerns regarding the fact that NVIDIA "has unilaterally narrowed the scope of documents sought in these RFPs" and that "N-Data seeks a broader category of documents than those that provide only a general overview of the USB and/or HDA features present in NVidia products." However, your following sentence seems to agree that NVIDIA's second production included precisely the sort of documents that you are seeking. It's unclear to me exactly what confusion you believe remains in our respective understanding of your discovery requests or what steps beyond the actual production of detailed microarchitectural specifications N-Data requires to allay its concerns.

Although I've stated this in the past, it bears repeating that our client is a non-party in this action and that it believes that it has fully complied with your discovery demands and been more than cooperative with you throughout this process.

It places unnecessary burden on our client when, after nearly three weeks of silence following a production, we receive a letter with a list of issues that demand response within a week.

As stated, I will be back in the country on June 2 and will be available to discuss these issues then. If for some reason an issue should arise that requires more immediate attention, please do not hesitate to contact Vickie Feeman, who is copied on this e-mail.

Best regards,



**ORRICK**

**JULIO AVALOS**
*attorney at law*
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 MARSH ROAD
MENLO PARK, CA 94025-1015

*tel* 650.289.7184
javalos@orrick.com

1/21/2009

www.orrick.com

# EXHIBIT D

June 4, 2008

Julio C. Avalos
(650) 289-7184
javalos@orrick.com

***VIA E-MAIL ATTACHMENT***

D. Stuart Bartow, Esq.
Goodwin Procter LLP
135 Commonwealth Dr.
Menlo Park, CA  94025
T: 650 – 752 – 3148


Re:     NVIDIA Non-Party Production

Dear Stuart:

    I am writing to follow-up on my e-mail of May 22, 2008 and to provide a more thorough response to your letter of May 19.  In that letter, you related a series of concerns stemming from NVIDIA's April 30 production of documents bearing bates range "NVIDIA 0847" through "NVIDIA 0961."

    As stated in my May 22 e-mail, NVIDIA has fully complied with N-Data's February 26, 2008 subpoena as required by the Federal Rules of Civil Procedure.  N-Data's continued insistence for duplicative reassurances regarding the exhaustiveness of NVIDIA's production seems aimed to accomplish little more than create additional burden and expense for our client.

    We believe NVIDIA's initial responses to your discovery requests to be self-explanatory. Discovery responses stating that NVIDIA does not possess responsive documents should be interpreted as meaning just that.  Where NVIDIA did not state that it was producing documents falling within a particular date range, no such limitation should be implied.  Any assertion that NVIDIA has produced only those documents falling within some unilaterally narrowed band of "general overview" documents is incoherent in light of NVIDIA's recent production containing detailed microarchitectural specifications.  With respect to the latter, the specifications produced by NVIDIA constitute an exhaustive account of the microarchitectural specifications within NVIDIA's possession relevant to your subpoena.

Greg Bishop
June 4, 2008
Page 2

Best regards,


Julio C. Avalos

cc:     Daniel T. Conrad, Esq.

# EXHIBIT E

Charles Koch
650.752.3217
ckoch@
goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
135 Commonwealth Drive
Menlo Park, CA 94025
T: 650.752.3100
F: 650.853.1038

October 14, 2008

**VIA EMAIL JAVALOS@ORRICK.COM**

Julio Avalos
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025

Re:   **Negotiated Data Solutions LLC v. Dell, et al.**
      **Case No. 2-06-cv-528 (CE), USDC Eastern District of Texas**
      **Our File No. 122947-173970**

Dear Julio:

I write in response to NVIDIA's discovery responses to N-Data's February 26, 2008 subpoena. While NVIDIA has produced 961 pages, these documents fail to respond adequately to the subpoena as outlined in previous correspondence.

Without repeating each point discussed in our letters on April 22, 2008 and May 19, 2008, in summary, NVIDIA has failed to produce technical documentation that shows the internal structural and functional details for USB and HDA modules, including microarchitecture specifications, functional specifications, and architectural specifications. (See Request Nos. 5, 6, 8, and 9-31.)

In addition to technical specifications, NVIDIA has also failed to provide any documents relating to NVIDIA's commercial relationship with Dell or with any of Dell's suppliers. Moreover, NVIDIA has not provided documents relating to communications between NVIDIA and other parties relating to N-Data. (See Request Nos. 1-4, and 7.)

As we are now nearing the close of discovery and NVIDIA has not provided documents in these key areas, we would like to meet and confer regarding your production as soon as possible. We are available anytime Wednesday, October 15, 2008, or Thursday, October 16, 2008.

Julio Avalos
October 14, 2008
Page 2


Because N-Data views this matter with some urgency, N-Data requests a meet and confer as soon as possible to avoid a motion to compel.  Please let me know if you are available at one of the times mentioned above.

Sincerely,


Charles F. Koch

CFK

# EXHIBIT F



## ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CALIFORNIA 94025

tel +1-650-614-7400
fax +1-650-614-7401
WWW.ORRICK.COM

October 15, 2008

Julio C. Avalos
(650) 289-7184
javalos@orrick.com

*VIA E-MAIL CKOCH@GOODWINPROCTER.COM*

Charles F. Koch, Esq.
Goodwin Procter LLP
135 Commonwealth Drive
Menlo Park, CA 94025

Re:    *Negotiated Data Solutions LLC v. Dell, et al.*
       *Case No. 2-06-cv-528 (CE), USDC Eastern District of Texas*

Dear Charles:

I write with respect to your October 14, 2008 letter regarding the above-referenced matter. As I explained in my June 4, 2008 letter to Stuart Bartow and reiterated in my meet and confer with Stuart on June 19, 2008, NVIDIA has fully complied with N-Data's February 26, 2008 subpoena as required by the Federal Rules of Civil Procedure. For this and the following reasons, we see no need to participate in an additional, duplicative meet and confer.

Your letter raises issues exhaustively covered and settled with Stuart four months ago during our June 19 meet and confer. Any additional conference on duplicative, settled issues would be redundant, unnecessary and overly burdensome to our client, who is not even a party to your action. Further, your letter is the first communication I have received regarding this matter since Stuart and I settled all outstanding issues on June 19. This four-month delay undercuts the "urgency" your letter expresses. After such an extended delay, it is unreasonable for you to demand a duplicative meet and confer on one or two days' notice and threaten to file a motion to compel if your demand is not granted.

Should you wish to discuss these matters further, please e-mail me to schedule a time to talk.

Best regards,

Julio C. Avalos

JCA/naa

OHS West:260532639.1

# EXHIBIT G



## ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CALIFORNIA 94025-1015

*tel* +1-650-614-7400
*fax* +1-650-614-7401
WWW.ORRICK.COM

December 19, 2008

Julio C. Avalos
(650) 289-7184
javalos@orrick.com

*VIA FIRST CLASS MAIL AND E-MAIL ATTACHMENT*

Greg Bishop
Goodwin Procter LLP
135 Commonwealth Dr.
Menlo Park, CA 94025

Re:     NVIDIA Non-Party Production

Dear Greg:

Thank you for your letter of December 18, 2008 memorializing our meet and confer this past Monday, December 15. As you are aware, it has been nearly 9 months since N-Data received nVidia's second round of non-party production. As I stated on Monday, it is our continued belief that nVidia has fully complied with its legal obligations. You and your colleagues expressed skepticism over this point and I agreed to take reasonable measures to reassure you.

As you summarize in your letter, on Monday we first discussed your desire for additional documents relating to products not previously identified by your client as relevant to your litigation with Dell, Inc.. When I asked why N-Data was only now, more than 9 months after the fact, altering the subset of products it believed relevant to its subpoena, you answered that additional facts obtained through the discovery process had revealed products previously unknown to you and your client. The only example provided during our meet and confer of such a product was the nForce 430, though you stated that there might be others and that a list of such products would be forthcoming. As of today, I have not received such a list from you or your colleagues. In any respect and as more fully discussed below, nVidia's production, though guided by Mr. Bartow's list of products, included schematics and diagrams not solely limited to that list.

Although you offered a reasonable explanation as to why N-Data now seeks documents relating to previously unidentified nVidia products, the same explanation cannot hold as to the second topic raised during our meet and confer, the purported "inadequacy" of nVidia's first and second productions. nVidia last produced documents on April 22, 2008. Though on Monday you characterized this production as consisting only of "publicly available data sheets," my review of the production this week reveals this not to be the case. In addition to data sheets (which are not publicly available nor devoid of architectural detail), N-Data received various Visio schematic drawings and flowcharts, as well as at least one design guide containing nearly two hundred pages of detailed schematic diagrams and instructions. Many of these documents related not simply to the



**ORRICK**

Greg Bishop
December 19, 2008
Page 2

particular subset of products identified by Mr. Bartow as relevant to N-Data's subpoena, but to the entire family of what was at nVidia internally known as the "Azalia" project, which covered all those HDA products relevant to your discovery requests.

It is difficult to understand—and candidly, difficult to explain to my client—why N-Data has waited eight months to object to the adequacy of this production. Nevertheless, as I agreed to on Monday, I have contacted my client and have asked them to confirm that the documents produced back in April constituted the entirety of "microarchitectural" documents relevant to your subpoena. As of the writing of this letter, the client has not completed its investigation. I trust that you understand that short notice at the height of holiday and vacation season is not particularly conducive to quick turnaround on discovery. I will of course try my best to have a definitive confirmation for you as quickly as I can, however, given holiday schedules and the possible unavailability of document custodians, I cannot promise such confirmation prior to next week's holidays. You have stated that your discovery period is "coming to a close shortly" and that you wish to "wrap up the issues surrounding this subpoena shortly." However, N-Data's inconvenience and, frankly, that suffered by my client in having to conduct a duplicative discovery investigation just days before Christmas, is due solely to N-Data's own delay.

I will be in contact with you soon.

Very truly yours,

Julio C. Avalos