Byron W. Cooper (State Bar No. 166578)
bcooper@goodwinprocter.com
Gregory S. Bishop (State Bar No. 184680)
gbishop@goodwinprocter.com
Ruby Wayne Wood (State Bar No. 229538)
rwood@goodwinprocter.com
GOODWIN PROCTER LLP
135 Commonwealth Drive
Menlo Park, CA 94025
Tel.: 650.752.3100
Fax: 650.853.1038

Attorneys for Plaintiff
NEGOTIATED DATA SOLUTIONS LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

NEGOTIATED DATA SOLUTIONS LLC,

Plaintiff,

v.

DELL INC.,

Defendant.

Case No. CV09-80012 MISC

Action pending in the United States District Court for the Eastern District of Texas (2:06-cv-528CE)

**PUBLIC VERSION**
**PLAINTIFF NEGOTIATED DATA SOLUTIONS' OPPOSITION TO NVIDIA'S MOTION TO QUASH SUBPOENAS**

Judge: Hon. Howard R. Lloyd
Date: March 10, 2009
Time: 10:00 a.m.
Place: Courtroom 2, 5th Floor

## OPPOSITION TO NVIDIA'S MOTION TO QUASH SUBPOENAS

Plaintiff Negotiated Data Solutions LLC ("N-Data") hereby opposes NVIDIA Corporation's ("NVIDIA") Motion to Quash Subpoenas ("Motion to Quash").[1]

## I. INTRODUCTION

NVIDIA misrepresents the nature of N-Data's discovery requests, attempting to make them seem burdensome and unreasonable. The reality is that N-Data seeks specific information regarding the structure and functionality of NVIDIA chips in Dell computers. This information is essential to N-Data's patent infringement lawsuit against Dell, and it is not burdensome for NVIDIA to produce this information. Moreover, the deposition that NVIDIA seeks to quash with this motion is designed to simply discover where relevant information might be found, whether in documents or individuals. NVIDIA seeks to avoid even providing this background information, shielding itself behind unconfirmed statement by its outside attorneys.

N-Data owns patents covering technology that is fundamental to Dell products that have Universal Serial Bus ("USB") and High Definition Audio ("HDA") capabilities. To provide some of the USB and/or HDA functionality, Dell products incorporate NVIDIA computer chips (or chipsets). Whether or not the Dell products accused in this lawsuit infringe the asserted N-Data patents depends, in part, upon the functionality and design of NVIDIA's chips.

N-Data seeks information on the functionality and design of NVIDIA's chips, but the documents produced to N-Data thus far do not provide the detailed information that N-Data seeks. The documents NVIDIA has produced provide only a high level overview of the chips. They do not contain the more extensive and detailed information that one would expect to be available to the engineers at NVIDIA. Therefore, N-Data has requested intermediate level documents, such as those that a chip designer would use to create the chips. N-Data has requested similar documents from other companies that provide competing chipsets and have been provided with millions of pages of documents, in addition to the RTL source code. In contrast, NVIDIA has only produced

---

[1] N-Data has also filed a Motion to Compel Discovery ("Motion to Compel"), and a Motion to Shorten Time N-Data's Motion to Compel Discovery and NVIDIA's Motion to Quash Subpoenas ("Motion to Shorten Time") (filed February 2, 2009). N-Data respectfully requests that this motion and the companion Motion to Compel be heard on the expedited schedule set forth in the Motion to Shorten Time.

approximately a thousand pages of high level documents. Declaration of Ruby W. Wood in Support of Opposition to Motion to Quash ("Wood Decl."), ¶2, Ex. A-C. NVIDIA's outside attorneys claim that no other technical documents exist, but refuse to provide any sworn testimony to that effect.[2] *See id.* at ¶3, Ex. D.

In order to create RTL code, chip designers need more information than that in the high level documents produced by NVIDIA. N-Data, in good faith, believes that NVIDIA may have intermediate level documents or other technical information that describe the structure and functionality that is implemented in the RTL code. N-Data has the right for an NVIDIA witness to explain whether such intermediate level documents exist, and if not, to explain what documents the chip designer used in designing and maintaining the RTL source code and to seek the identity of those chip designers.

## II. <u>FACTUAL BACKGROUND</u>

NVIDIA, like all semiconductor manufacturers, maintains design documents for its chips at various levels of detail and granularity, ranging from very high-level and brief datasheets down to individual transistor level micro code. For the purposes of this litigation, the level of engineering detail required to examine the relevant features of the NVIDIA chips most efficiently is at an intermediate level of detail comprising the Architecture Specifications and Micro Architecture Specifications. This level of detail is critical because it bridges the gap between the general overview of features described in a datasheet, and the actual layout of the millions of individual transistors in each chip. In other words, it provides the necessary details to explain the operation and structure of the chip without confounding the analysis with far more detail than is necessary.

As described herein, N-Data has been (for the last nine months) requesting intermediate-level technical materials such as the architecture specifications and microarchitectures specifications materials (in their native form) for a reasonable number of NVIDIA chips. In response to these requests, NVIDIA has only produced a few high level documents that do not

[2] NVIDIA also refused to provide its detailed RTL code, which is the subject of N-Data's pending Motion to Compel.

have enough relevant information. NVIDIA has maintained that such documents are sufficiently responsive despite the numerous explicit requests for architecture specifications and microarchitecture specifications. N-Data has also requested NVIDIA's RTL code regarding the relevant chips, which NVIDIA has refused to provide.

On February 26, 2008, N-Data served NVIDIA with a subpoena for documents. Wood Decl., ¶4, Ex. E. In response to a letter on March 13, 2008 from NVIDIA's counsel expressing some early concerns regarding the document requests, N-Data's counsel responded on March 14, 2008 to each issue raised by NVIDIA. *Id.* at ¶5, Ex. F. For example, to assist NVIDIA in document collection, N-Data provided a short tentative list of only four NVIDIA chips that were identified by Dell as having USB/HDA functionality. *Id.* at ¶5, Ex. F at ¶3. Also, N-Data explained that the documents needed were more "than just the publicly available specifications themselves." *Id.* at ¶5, Ex. F at ¶6. Furthermore, N-Data offered to work with NVIDIA to minimize any potential burden on NVIDIA them. *Id.*

Subsequently, NVIDIA responded with formal objections to the subpoena followed by productions of documents on April 8, 2008, April 30, 2008, and January 8, 2009. Wood Decl., ¶3, Ex. A-C. Contrary to what was discussed between the parties, these productions consisted of, at best, high-level manuals and component specifications (often referred to in the industry as "CSPECS"), which are not much different from the publicly available NVIDIA datasheets. These CSPECS, or the NVIDIA equivalent of CSPECS, lack detail at the intermediate engineering level as is necessary for N-Data to conduct a thorough and complete infringement analysis of these chips.

N-Data communicated the deficiencies in this production to NVIDIA on April 22, 2008 (*id.*, ¶6, Ex. G), and NVIDIA responded with another small document production consisting of 114 pages. *Id.* at ¶3, Ex. B. After a review of these documents, N-Data found that the level of technical detail was still insufficient for the purposes of the pending litigation. In fact, some of these documents appear to be duplicates of materials already produced. *Cf.*, *id.*, ¶ 7, Ex. H-I. N-Data again requested sufficient technical documents as set forth in the original subpoena. *Id.* at ¶8, Ex. J. In response, NVIDIA asserted that it "has produced any documents in it possession to

show the internal structural and functional details for the USB and HAD modules cited in [the] subpoena". *Id.* at ¶9, Ex. K. However, NVIDIA still had not produced any information on several chipsets that were sold to Dell, including the nForce 430. Subsequently, NVIDIA produced another 108 pages. *Id.* at ¶3, Ex. C. Like the previous document requests, this production also failed to include the necessary engineering level detail to describe the control and data signals throughout the USB and HDA sections of NVIDIA's products. *Id.* at ¶10, Ex. L. Although N-Data had hoped to avoid reviewing detailed RTL source code because such review is tedious and time consuming, NVIDIA's failure to provide technical documents of sufficient detail necessitates use of the RTL code. *See*, N-Data's Motion To Compel.

In an effort to determine the extent of documents that NVIDIA maintains, N-Data issued a deposition subpoena for production of a 30(b)(6) witness to seek specific information regarding the identity of all chips or chipsets provided to Dell by NVIDIA that have USB or HDA functionality as well the corresponding documentation of those chips or chipsets. Declaration of Chester Day in Support of NVIDIA's Motion to Quash Subpoenas ("Day Decl."), Ex. B.

The subpoena for a 30(b)(6) witness listed the following deposition topics:

> (1) The identity of all integrated circuits, chips, or chipsets provided directly or indirectly to Dell since March 3, 2004 that provide USB or HD Audio functionality, including the data path and control of the USB or HD Audio data;
>
> (2) The identity, nature, location, and authors of all documents for the chip or chipset identified in Topic No. 1, including all functional specifications, architecture specifications, microarchitecture specifications, behavioral specifications, component specifications, and design specifications, and VHDL, RTL, or other hardware description source code;
>
> (3) The identity and provider of all software or firmware provided directly or indirectly to Dell for providing USB and HD Audio functionality in conjunction with the chip or chipsets identified in Topic No. 1, including software drivers; and
>
> (4) The identity of persons and teams involved in the design of the chip or chipsets identified in Topic No. 1.

*Id.* at p.3.

NVIDIA made vague allegations of technical defects in the subpoena and refused to produce a witness, without seeking relief from the Court. Despite having agreed to accept service, at no point did NVIDIA work with counsel for N-Data to resolve these "defects." NVIDIA did

not work to change the deposition date to allow time for the parties to resolve their issues, file a motion to quash (the first subpoena) or move for a protective order. It simply refused to attend the deposition.

In a final attempt to resolve this dispute with NVIDIA without seeking relief from the Court, N-Data, out of an abundance of caution, reissued the deposition subpoena (Day Decl., Ex. F) and attempted, once again, to meet and confer with NVIDIA. During the course of the meet and confers, NVIDIA took the positions that it (1) has produced all of its technical documents; (2) will not produce its RTL code, if it exists; and (3) will not produce a witness until 10 business days after the hearing on the Motion to Quash is resolved. *See* Wood Decl. at ¶¶10-12, Ex. L-N.

## III. ANALYSIS

### A. N-Data Has The Right To Seek Relevant Evidence From NVIDIA

Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery, not privileged, that is "relevant to any party's claim or defense." Under both the Federal Rules and Local Rules, patent plaintiffs are entitled to broad discovery concerning any products or systems accused in their Infringement Contentions. *3Com Corp. v. D-Link Sys., Inc.*, C 03-2177 VRW, 2007 WL 949596, at *2 (N.D. Cal. Mar. 27, 2007) (citing *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). "The discovery standard is intentionally broad: requested discovery is relevant if it 'appears reasonably calculated to lead to the discovery of admissible evidence' relating to the claims or defenses of any party. *Utstarcom, Inc. v. Starent Networks Corp.*, No. C-04-1122PVT, 2005 WL 1397507, at *1 (N.D. Cal. Jun. 14, 2005) (citation omitted); *see also L.G. Philips LCD Co. v. Tatung Co.*, Nos. Misc. F-07-0009 EFB, S-07-0018 FCD EFB, 2007 WL 869700, at *2 (E.D. Cal. Mar. 21, 2007). N-Data has the right to seek discovery from NVIDIA pursuant to Federal Rules of Civil Procedure 30, 34(c) and 45.

### B. Documents Produced To Date Are Not Sufficient

NVIDIA incorrectly claims that the information it has provided to date is sufficient and that it should have no further obligations to respond to any of N-Data's discovery requests, including production of a 30(b)(6) witness. Motion to Quash, p. 8. First, NVIDIA has an obligation to produce a witness to address N-Data's questions regarding its document search and

the documents it has produced. Second, the documents that NVIDIA has produced are not sufficient to provide the required information specifically requested by N-Data.

For example, NVIDIA represents that its production of 114 pages on April 8, 2008 contains "microarchitectural specifications" as requested by N-Data. *See* Avalos Declaration in Support of NVIDIA's Motion to Quash Subpoenas ("Avalos Decl."), ¶6. These materials in fact consist of:



### C. N-Data's Requests Are Narrowly Tailored

N-Data's requests are narrowly tailored and seek specific information relevant to N-Data's claims against Dell. As discussed above, N-Data requests information necessary to determine the structure and function of Dell's accused products. *See also* Motion to Compel. The scope and

purpose of the 30(b)(6) deposition are reasonable.

**1. N-Data Requests Topics 1 And 3 Seek Essential Information Regarding The Products NVIDIA Sells To Dell**

Topics 1 and 3 seek the identity of NVIDIA products provided to Dell for the products at issue in this litigation. N-Data requests this information to cross-check the information it has from Dell. Dell sells products from a variety of sources and manufacturers. If NVIDIA sells products to Dell that are not reflected in Dell's discovery responses, N-Data has the right to discover that information. NVIDIA is in the best position to know what products it provided to Dell that have USB and HDA functionality. These requests are not burdensome because they simply require NVIDIA to identify the relevant products that it designed and sold to its customers. Furthermore, these requests are highly relevant - information about the NVIDIA chips is at the core of this litigation. *See also* Motion to Compel.

**2. Topics 2 and 4 Seek Essential Information Regarding What Technical Information About The Products Sold To Dell Is Available At NVIDIA**

Topics 2 and 4 seek the identity of NVIDIA's designers and information regarding documentation of its products. Because N-Data has not received the relevant technical documents regarding NVIDIA's chips, N-Data seeks an NVIDIA witness who can explain what other technical documents are available or why no further documents are available. From its experience with other chipset manufacturers, N-Data would expect that more documents may exist than NVIDIA has provided. This information is essential for N-Data's lawsuit. At this point, only NVIDIA's attorneys have discussed the technical documents with N-Data, but have refused to provide any sworn testimony about NVIDIA's documents. N-Data has a right to depose an NVIDIA witness with knowledge on this topic. Should these documents not exist, as asserted by NVIDIA's counsel, N-Data has the right to seek the identity and testimony of the designers of the chips to discover the relevant and necessary information that would allow N-Data to complete a thorough infringement analysis.

**D. The Subpoenas Seek Relevant, Non-Duplicative Information**

NVIDIA's claim that N-Data seeks irrelevant information is nonsensical. N-Data seeks information that is not just relevant, but essential to its claims. N-Data has accused Dell of

infringing its patents by selling products with USB and HDA functionality. This functionality is provided, in part, by NVIDIA. NVIDIA cannot shirk its duty to produce this relevant information. Furthermore, even if N-Data's requests related to products other than those currently accused, NVIDIA would still have a production obligation. *See*, *L.G. Philips LCD Co. Ltd. V. Tatung Co.*, Nos. Misc. F-07-0009 EFB, S-07-0018 FCD, EFB, 2007 WL 869700, *2 (E.D. Cal. Mar. 21, 2007) (denying third party's motion to quash where plaintiff sought information about all potentially infringing products, not just those that had been identified thus far); *See also* Motion to Compel.

As explained, N-Data seeks deposition testimony that will lead to discoverable information regarding the functionality of NVIDIA's chips that it sells to Dell. An NVIDIA witness could easily clarify this situation by testifying about what documents exist, explaining why there are no intermediate documents and/or how the chip designers created the chips without the expected technical documents. Further, the witness will be able to provide the identity of persons that can personally explain the functionality of the chipsets at issue. N-Data seeks this information because it is essential to its claim against Dell.

**E. NVIDIA Improperly Delays Production of Documents And Witnesses**

N-Data served the original document subpoena on NVIDIA on February 26, 2008. The parties have been in communication since service of the subpoena and N-Data has narrowed the requests and attempted to resolve the discovery disputes, while NVIDIA dribbled out the few documents it has produced. Now, with discovery ending on March 10, 2009, NVIDIA is attempting to block meritorious discovery with a meritless motion to quash. Its moving papers reveal NVIDIA's motives. By refusing to attend the originally noticed deposition and by now moving to quash the second noticed deposition (which NVIDIA conceded has no defects and which is focused on discovering relevant information), NVIDIA hopes to let the clock run out on the discovery period and preclude N-Data from having time to analyze the structure and functionality of the NVIDIA products.

To delay discovery as long as possible, NVIDIA has informed N-Data that it will not

produce a witness until 10 business days after the Motion to Quash is resolved.[3] *See* Wood Decl., ¶11, Ex. M. For NVIDIA to argue at this point that they need an additional 10 days to prepare a witness after the Motion to Quash is resolved demonstrates their bad faith. They had notice of this deposition since January 13, 2009 and, given the straightforward nature of the deposition topics, they should produce their witness the day after the Motion to Quash is resolved.

## IV. CONCLUSION

For the foregoing reasons, Cross-Defendant respectfully requests that this Court deny NVIDIA's Motion to Quash.

Dated: February 3, 2009

Respectfully submitted,

/s/Gregory S. Bishop

Gregory S. Bishop
Ruby Wayne Wood
GOODWIN PROCTER LLP
135 Commonwealth Drive
Menlo Park, CA 94025
Tel.: 650.752.3100
Fax: 650.853.1038

Attorneys for Plaintiff
NEGOTIATED DATA SOLUTIONS LLC

---

[3] Under NVIDIA's proposed schedule, NVIDIA would not have to produce a witness until as late as March 24, 2009, if the Court were to deny N-Data's Motion to Shorten Time. Furthermore, if N-Data does not get the necessary information from NVIDIA, the next logical avenue is to depose the designers of the chipset. Those witnesses would be identified at the 30(b)(6) deposition pursuant to Topic 4. *See* Motion to Shorten Time.