1

2          **\*E-FILED 3/17/2009\***

3

4

5

6

7                        NOT FOR CITATION

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11   NEGOTIATED DATA SOLUTIONS LLC,          No. C09-80012MISC JF (HRL)

12          Plaintiff,                        **ORDER (1) GRANTING IN PART AND
                                              DENYING IN PART PLAINTIFF'S**
13    v.                                      **MOTION TO COMPEL DOCUMENTS;
                                              AND (2) GRANTING NVIDIA**
14   DELL, INC.,                              **CORPORATION'S MOTION TO QUASH
                                              DEPOSITION SUBPOENAS**
15          Defendant.
                                              **[Re: Docket Nos. 1 and 9]**
16

17   _____/

18          Before the court in this miscellaneous action are two discovery motions:  Plaintiff

19   Negotiated Data Solutions LLC ("N-Data") moves to compel non-party NVIDIA Corporation

20   ("NVIDIA") to produce documents, and NVIDIA moves to quash deposition subpoenas.  Upon

21   consideration of the moving and responding papers, as well as the arguments of counsel, this

22   court (1) grants in part and denies in part N-Data's motion to compel and (2) grants NVIDIA's

23   motion to quash.

24                        **I.  BACKGROUND**

25          N-Data is the plaintiff in a patent infringement lawsuit currently pending against Dell,

26   Inc. ("Dell") in the United States District Court for the Eastern District of Texas ("Texas

27   Action").  (Bishop Reply Decl. ISO Mot. to Compel, Ex. H).  In that action, N-Data claims that

28   Dell products with Universal Serial Bus ("USB") and High Definition Audio ("HDA")

**United States District Court**
For the Northern District of California

1    capabilities infringe the asserted N-Data patents.  According to N-Data, Dell products

2    incorporate NVIDIA's chips in order to provide some of the accused capabilities.

3         In February 2008, N-Data served a subpoena duces tecum on NVIDIA, seeking, in

4    particular, specifications and other technical documentation about the chips allegedly used for

5    implementing the USB and HDA functions in Dell's products.  (Bishop Decl. ISO Mot. to

6    Compel, Ex. A).  In April 2008, NVIDIA produced responsive documents which, N-Data says,

7    were little more than a handful of data sheets containing only high-level technical information.

8    Following some meet-and-confer negotiations and the exchange of correspondence, NVIDIA

9    supplemented its document production.  Claiming that NVIDIA's production still lacked

10   sufficient technical detail, N-Data convened another meet-and-confer session, which eventually

11   was held in June 2008.  At that time, NVIDIA said it produced all relevant microarchitectural

12   specifications in its possession and that it believed that it had fully complied with the subpoena.

13   (Avalos Decl. ISO Mot. to Quash, ¶¶ 10-11 and Ex. D).  There was nothing but radio silence for

14   the next four months until mid-October 2008 when N-Data resurfaced and stated that it still

15   believed NVIDIA's document production was insufficient.  Even so, N-Data reportedly made

16   no further contact until December 2008 when the parties again met and conferred over

17   NVIDIA's document production.  NVIDIA then conducted another search and produced

18   additional documents on January 8, 2009.

19        Several days later, and still unsatisfied with NVIDIA's document production, N-Data

20   served NVIDIA with a subpoena for a Fed.R.Civ.P. 30(b)(6) deposition, seeking testimony on

21   the following four topics:

22        1.    The identity of all integrated circuits, chips, or chipsets provided directly or
                indirectly to Dell since March 3, 2004 that provide USB or HD Audio
23              functionality, including the data path and control of the USB or HD Audio data.

24        2.    The identity, nature, location, and authors of all documents for the chip or
                chipset identified in Topic No. 1, including all functional specifications,
25              architecture specifications, microarchitecture specifications, behavioral
                specifications, component specifications, and design specifications, and VHDL,
26              RTL, or other hardware description source code.

27        3.    The identity and provider of all software or firmware provided directly or
                indirectly to Dell for providing USB and HD Audio functionality in conjunction
28              with the chip or chipsets identified in Topic No. 1, including software drivers.

United States District Court

For the Northern District of California

4.      The identity of persons and teams involved in the design of the chip or chipsets identified in Topic No. 1.

(Day Decl. ISO NVIDIA's Mot. to Quash, Ex. F).  NVIDIA claimed that the subpoena was procedurally deficient (and therefore void) because it failed to give sufficient notice, did not include the requisite witness fees, and did not say how the deposition was to be recorded.  N-Data disagreed, but nonetheless served a second Fed.R.Civ.P. 30(b)(6) deposition subpoena which reportedly corrected the things about which NVIDIA complained and included the same topics for examination.  Meanwhile, discovery in the Texas Action, which was set to close in late January 2009, was extended to March 10, 2009.  At the hearing on the instant discovery motions, N-Data advised that the close of discovery has been further extended to March 24, 2009.

NVIDIA now moves to quash the deposition subpoenas and resists N-Data's efforts to compel the production of any more documents.  It takes the position that N-Data is conducting a last-minute fishing expedition in order to develop a back-up patent infringement case against NVIDIA.  Maintaining that NVIDIA's documents are still light on technical detail, N-Data separately moves for an order compelling NVIDIA to produce Registered Transfer Level ("RTL") code and any corresponding intermediate level specifications used by NVIDIA pertaining to all NVIDIA chips relevant to this case.  It also contends that NVIDIA must be directed to produce Fed. R. Civ. P. 30(b)(6) witness(es) who can testify about the identity, nature, location and authors of any other pertinent technical documentation.

**II.  DISCUSSION**

Rule 45 of the Federal Rules of Civil Procedure authorizes the issuance of a subpoena commanding a non-party to attend and testify; produce designated documents, electronically stored information, or tangible things in that non-party's possession, custody or control; or permit the inspection of premises.  FED.R.CIV.P. 45(a)(1)(A)(iii).  The scope of discovery through a Fed. R. Civ. P. 45 subpoena is the same as that applicable to Fed. R. Civ. P. 34 and the other discovery rules.  FED.R.CIV.P. 45 advisory committee's note (1970).

3

1    Parties may obtain discovery about any nonprivileged matter that is relevant to any

2    party's claim or defense.  FED.R.CIV.P. 26(b)(1).  "Relevance under Rule 26(b)(1) is construed

3    more broadly for discovery than for trial."  Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc., 813

4    F.2d 1207, 1211 (Fed.Cir.1987).  "Relevant information need not be admissible at the trial if the

5    discovery appears reasonably calculated to lead to the discovery of admissible evidence."

6    FED.CIV.P. 26(b)(1).  "'A district court whose only connection with a case is supervision of

7    discovery ancillary to an action in another district should be especially hesitant to pass

8    judgment on what constitutes relevant evidence thereunder.  Where relevance is in doubt . . . the

9    court should be permissive.'"  Gonzales v. Google, Inc., 234 F.R.D. 674, 681 (N.D. Cal., 2006)

10   (quoting Truswal Sys. Corp., 813 F.2d at1211-1212).  Discovery is not unfettered, however.  A

11   court must limit the extent or frequency of discovery if it finds that (a) the discovery sought is

12   unreasonably cumulative or duplicative or can be obtained from a source that is more

13   convenient, less burdensome or less expensive, (b) the party seeking discovery has had ample

14   opportunity to obtain the information through discovery; or (c) the burden or expense of the

15   discovery sought outweighs its likely benefit, considering the needs of the case, the amount in

16   controversy, the parties' resources, the importance of the issues at stake, and the importance of

17   the discovery in resolving those issues.  FED.CIV.P. 26(b)(2)(C)(i)-(iii).

18   **A.    N-Data's Motion to Compel**

19   At oral argument, NVIDIA's counsel represented to this court that NVIDIA has now

20   produced all responsive documents, except for its RTL code.  Thus, the only real issue in

21   dispute is whether, as N-Data argues, NVIDIA ought to produce its RTL code to aid N-Data's

22   understanding of the operation of NVIDIA's chips, or whether, as NVIDIA contends, the

23   requested discovery is irrelevant and possible prejudice to NVIDIA outweighs N-Data's stated

24   need for the information.

25   Inasmuch as NVIDIA's code bears upon the operation of NVIDIA's chips that allegedly

26   provide some of the accused functions in Dell's chips, this court finds that it is relevant within

27   the broad standard for discovery under Fed. R. Civ. P. 26.  NVIDIA relies primarily upon Micro

28   Motion, Inc. v. Kane Steel Co., 894 F.2d 1318 (Fed. Cir. 1990) to support its contention that the

**United States District Court**
For the Northern District of California

4

**United States District Court**
For the Northern District of California

1   requested code is irrelevant.  However, <u>Micro Motion</u> is readily distinguishable from the instant

2   case.  In <u>Micro Motion</u>, the issue of patent infringement had already been tried once, and

3   damages discovery had been completed.  <u>Id</u>. at 1323.  After the court ordered a new trial and

4   permitted the plaintiff to conduct "updated" discovery on damages, plaintiff served several

5   subpoenas, seeking broad discovery on numerous non-party competitors' products and sales.

6   As to lost profit damages, plaintiff expected that defendant would argue that others sold

7   acceptable noninfringing substitutes.  Thus, plaintiff sought this discovery in the hope of

8   finding evidence that the non-party products infringed the asserted patents and were

9   unacceptable substitutes.  <u>Id</u>. at 1323.  Finding that plaintiff's requested discovery would lead to

10  "an absolute quagmire of proofs concerning a dozen or so other products that are related to the

11  main suit only with respect to damages," the court concluded that the discovery was not

12  warranted.  <u>Id</u>. at 1324.

13          Here, by contrast, the operation of NVIDIA's chips bears directly upon the accused

14  functions in Dell's chips.  Indeed, NVIDIA has already produced responsive information.  It

15  simply balks at producing the more detailed information embodied in its RTL code.  On the

16  record presented, this court finds that the requested information is not duplicative or obtainable

17  through other sources.  Nor does the record support NVIDIA's assertion that the parties agreed

18  that source code would be entirely off-limits in discovery.  N-Data says that NVIDIA's

19  document production comprises early revisions and other documents that do not describe the

20  actual circuitry or identify the products to which they pertain.  (<u>See</u> Wood Decl. ISO Mot. to

21  Compel, Ex. H-I and O-S).  Although N-Data might well have sought the discovery sooner,

22  discovery in the underlying action remains open.  At oral argument, NVIDIA advised that Intel

23  Corporation has intervened in the Texas Action and says that Intel is a much closer competitor

24  to NVIDIA than N-Data.  But the mere fact that Intel is in the case does not mean that NVIDIA

25  should never have to produce relevant information, including its code; and, NVIDIA has not

26  made a showing that any burden that is imposed will be undue.  Reluctance to produce sensitive

27  information, however, "is in itself an insufficient basis on which to deny discovery of that

28  information under appropriate protection from divulgement to competitors."  <u>Truswal Sys.</u>,

United States District Court
For the Northern District of California

1    Corp., 813 F.2d at 1211.  The record indicates that there is a protective order in place in the

2    underlying action.  This court assumes that NVIDIA may seek additional protection for the

3    production of its source code if necessary and appropriate.

4         Accordingly, N-Data's motion to compel production of NVIDIA's RTL code is granted.

5    NVIDIA shall forthwith produce its RTL code or make the same available for inspection.  To

6    the extent N-Data's motion to compel can be construed as seeking other documents or

7    information, the motion is denied.

8    **B.     NVIDIA's Motion to Quash**

9         As for the requested Fed. R. Civ. P. 30(b)(6) deposition of NVIDIA, N-Data asserts that

10   it needs NVIDIA's deposition testimony to ascertain whether there are (a) any other responsive

11   technical documents that remain to be produced; and (b) any additional parts that NVIDIA

12   supplies to Dell and which are incorporated into the accused Dell products.  However, as

13   discussed above, NVIDIA's counsel represents to the court that it has produced all responsive

14   documents, save for its RTL code.  The requested deposition testimony is unreasonably

15   cumulative, duplicative and burdensome.  This court is unpersuaded that NVIDIA should be put

16   to the burden of producing designee(s) for a deposition merely to confirm what kinds of

17   documents NVIDIA has or whether there is anything else to be produced.  Nor has Dell shown

18   any reasonable basis to suspect that there are any additional NVIDIA parts sold directly or

19   indirectly to Dell that bear on the issues in the underlying lawsuit, much less that N-Data is

20   entitled to a probing deposition as to any other NVIDIA parts to "cross-check" information N-

21   Data has received from Dell on the speculative theory that such information might be unearthed.

22        Accordingly, NVIDIA's motion to quash the deposition subpoenas is granted.

23   However, this court's ruling is without prejudice to N-Data to seek a deposition of NVIDIA as

24   to the operation of NVIDIA's chips (after inspection and analysis of the RTL code), provided

25   that any such deposition can be accomplished within the schedule set by the presiding judge in

26   the underlying Texas Action.

27

28

SO ORDERED.

Dated:    March 17, 2009

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

United States District Court

For the Northern District of California

**5:09-mc-80012 Notice electronically mailed to:**

D. Stuart Bartow sbartow@goodwinprocter.com

Gregory S. Bishop gbishop@goodwinprocter.com, mrubio@goodwinprocter.com, sgonzalez@goodwinprocter.com

I. Neel Chatterjee nchatterjee@orrick.com, adalton@orrick.com, kmudurian@orrick.com, mawilliams@orrick.com

Julio Cesar Avalos javalos@orrick.com, aako-nai@orrick.com, adalton@orrick.com

Vickie L. Feeman vfeeman@orrick.com, aruiz@orrick.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program**.

United States District Court

For the Northern District of California